[Criminal No. 331.   Filed April 27, 1914.]

[140 Pac. 215.]

# J. W. MARLEY, R. S. MARLEY, A. C. MARLEY and G. D. MARLEY, Appellants, v. STATE, Respondent.

1. LARCENY—ALLEGATIONS OF INDICTMENT—WANT OF CONSENT.—Under Penal Code of 1901, section 441, defining larceny as a felonious stealing, taking, carrying or driving away of the personal property of another, the indictment need not expressly allege that the property was taken against the owner's consent.

2. LARCENY—ADMISSION OF EVIDENCE—OWNERSHIP BY ACCUSED.—In a prosecution for larceny by stealing a steer, in which the state did not prove the recording of the brand found on the animal, defendants could show that they took the steer believing it to bear a certain brand, and that all steers of its age bearing that brand running on the range where the particular steer was found were claimed by them.

3. LARCENY—DEFENSES.—One is not guilty of larceny who takes the property under a *bona fide* claim of ownership.

[As to what constitutes larceny, see notes in 57 Am. Dec. 271; 88 Am. St. Rep. 559.]

APPEAL from a judgment of the Superior Court of the County of Navajo. Sidney Clapp, Judge. Affirmed. Reversed and remanded.

## STATEMENT OF FACTS BY THE COURT.

The appellants were indicted, charged with the larceny of a steer. The indictment, omitting the formal parts, is as follows: "The said J. W. Marley, R. S. Marley, A. C. Marley and G. D. Marley on or about the 8th day of February, 1911, and before the finding of this indictment, in Navajo county of the then territory of Arizona, and now Navajo county of the state of Arizona, did willfully, unlawfully and feloniously take, steal and carry away one steer that was then and there the property of Luther Hart, J. G. Verkamp, and Mary Babbitt, contrary," etc. The defendants were jointly tried and convicted as charged. From the judgment of conviction and from the order refusing a new trial, the defendants have appealed.

Mr. B. F. Adams, Mr. Henry F. Ashurst and Mr. J. E. Jones, for Appellants.

Mr. G. P. Bullard, Attorney General, Mr. Leslie C. Hardy, Assistant Attorney General, Mr. J. E. Crosby, County Attorney, for Respondent.

Mr. Reese M. Ling and Mr. E. S. Clark, of Counsel, for Respondent.

CUNNINGHAM, J.—The appellants have specified twenty-seven grounds of error, and these have been grouped by appellants under three heads for the treatment on this appeal, to wit: First, the insufficiency of the indictment; second, rulings of the court admitting and rejecting evidence; third, errors in giving, modifying, and refusing instructions.

The abstract of the record furnished fails to disclose the demurrer to the indictment as filed, and for that reason we will only consider the indictment with regard to the sufficiency of the facts stated to constitute a public offense. Counsel insist only upon the failure of the indictment to allege that the taking was without the consent of the owners, and with the intent to deprive the owners of the value of their property.

Larceny is defined as "the felonious stealing, taking, carrying, leading, or driving away the personal property of another." Section 441, Ariz. Pen. Code 1901.

"The indictment is sufficient, if it can be understood therefrom: . . .

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Subdivision 6, sec. 833, Ariz. Pen. Code 1901.

Under the Penal Code of this state at the date of the alleged offense, and when the indictment was returned, it was not necessary to allege in the indictment or information that the property was taken against the consent of the owner. There is nothing found in the statutory definition of larceny (section 441, Ariz. Pen. Code 1901) to that effect. "But such consent is, at the common law, matter simply of defense, and the

absence of it does not enter into a *prima facie* case. Hence nonconsent is not averred in the indictment, and it need not be proved." Bish. Cr. Prac., sec. 752a. So the supreme court of California, in *People* v. *Davis,* 97 Cal. 194, 31 Pac. 1109, says. We have the same worded definition of larceny with California and hold to the same view.

The charging part of the indictment, "did willfully, unlawfully and feloniously take, steal and carry away," etc., is a sufficient statement of the intent with which the taking was done under our statute. *People* v. *Brown,* 27 Cal. 500.

The indictment sets forth the act charged as the offense clearly and distinctly in ordinary and concise language, and in such manner as to enable a person of common understanding to know that the defendants are charged thereby with the larceny of a steer, and that is all the statute requires the indictment to contain in respect to alleging the intent. The statutes of Texas in charging this offense require more than is required by the statutes of California, which we have adopted, and therefore the Texas cases cited by appellants' counsel are not authority here upon the sufficiency of the indictment in respect to the questions under consideration.

The appellants complain that the court refused to permit them to prove the ownership of the animal, alleged to have been stolen, in Heck Marley, one of the defendants, and therefore refused to them the right to establish their defense and right to slaughter the animal. Defendants admit they had the animal in their cattle corral and slaughtered it at the time and place shown by the evidence of the prosecution. The evidence that Luther Hart, J. G. Verkamp and Mary Babbitt were the true owners of the X lazy S brand and the owners of the range cattle bearing that brand was not denied by defendants; but defendants say that one of their number, Heck Marley, owned certain cattle on the range that bore the brand 7 bar T on the left ribs and X on the left hip, and that the animal in question was so branded, or defendants believed it was so branded, and slaughtered it believing the animal belonged to Heck Marley. The court first admitted evidence tending to prove that Young Marley owned cattle in the brand mentioned, and shipped them from Texas to Arizona and released them upon the open range without any change of brand.

XV Ariz.—32

That afterward Young Marley sold six or eight head of said steers bearing 7 bar T on the ribs and X on the left hip to Heck Marley, one of the defendants. A witness, Les Hughes, testified that he was working for the Marleys in 1905 and was present at Folsom dam near Winslow when, during that year, six, seven or eight head of yearling steers arrived with a shipment of cattle from Texas. They each bore the said 7 bar T brand. They were received as belonging to Young Marley, and turned out on the range at Folsom dam in the care of these appellants. Witness while at work on the range at subsequent times saw some of the steers. Then the witness was asked this question: "Q. Mr. Hughes, I omitted to ask you the full brand which I aimed to ask you. I aimed to ask you whether or not you know who is the owner or purported owner of the 7 bar T on the left side with X on the left hip." To which the state objected, but, before a ruling from the court was had, the witness answered, "Heck Marley." The objection was made that this was "an attempt to show title in someone else against the lawful claim of title already in evidence here, against positive claim of title made in the regular way; that is to say, we have shown brand tax and payment of brand. Now then, for a mere claim of ownership to prevail against that would be, of course, contrary to all rules of evidence. There must be positive proof of ownership of such strength that it would overthrow the claim made by the state before it can be admitted."

The court said in ruling: "You cannot prove ownership, but, however, will let the witness answer that question. You cannot prove ownership by that. He has already answered the question. . . . There will be no more of it. You will not proceed any further with it." The prosecution moved to strike the answer. The court stated: "The court has ruled that this testimony is not proper." Appellants then offered further evidence along that line in these words: "We now tender and offer to prove by other witnesses that they know that these animals were brought from Texas, and that Heck Marley—that it is generally reputed that Heck Marley always claimed some steers in this brand." Without a formal objection, but in answer to a question from counsel as to what the former ruling of the court had been, the court stated: "The

court tells you not to go any further with this line of testi-mony.'' Upon cross-examination the witness was examined closely about the steers, from whence and how they came to Arizona, about other cattle in the same shipment and brands appearing on the cattle, the number of different brands in the shipment, where the cattle of the shipment were turned loose. He was cross-examined closely about the 7 bar T brand, where he had seen it, and if he had seen other cattle on the range bearing that brand.

When counsel had finished the cross-examination a juror by permission of the court asked the witness the question: ''Can you tell me who claimed the 7 bar T with X on the left hip when they were shipped to this country?'' The witness, answering, said: ''Yes, sir. I answered that question di-rectly. As I told Mr. Ling they was owned by Young Marley individually.''

Question by Mr. Ling: ''You said in your direct examina-tion that they were owned by Heck Marley. A. They are at present. Q. How do you know they are? A. Well, sir, I heard the trade between Young Marley and his brother when he left here and went to Texas. He turned his cattle over to him.'' The prosecution again objected because no bill of sale was made conveying the cattle. The court said in ruling: ''They cannot prove ownership that way. The court was allowing you to explain the similarity of brands. That was the only thing the court was allowing. The court would not permit you to prove ownership. Not that way. . . . The court will not permit them to prove ownership. The court has said so.

''Mr. Ling: But a claim of ownership, the effect is probably the same.

''The Court: The court will not permit any more of it, and will take the motion to strike under advisement. . . . The court has not ruled on the motion to strike. . . . The court will not permit any more testimony of this kind.

''The court has not ruled on this yet. The court will do so after a while. The court is of the opinion that the testi-mony is wrong, improper testimony, but will take the motion to strike under advisement.''

Counsel signified their intention to wait until a ruling on the motion was had. The court then ordered the evidence stricken. At a subsequent stage of the trial the state was permitted to introduce as rebutting evidence testimony tending to contradict this evidence of defendants stricken, that is, the state offered evidence tending to show that no such cattle as the steers described had ever been seen by stockmen at their round-ups of the range adjacent to Folsom Dam. This record as made is not very definite as to the exact evidence stricken, when considered alone, but when we refer to the instructions, no doubt exists as to the evidence intended to be stricken and rejected.

The court instructed the jury in part in these words:

"I charge you that the defendants do not deny the killing of the animal mentioned in the indictment, but claim that it bore a brand claimed by one of the defendants, and the said animal had ranged upon the range claimed or used by the defendants since the year 1905. I charge you that before you can consider any evidence tending to support this claim there must be evidence before you that the brand so claimed was the recorded brand of the defendant claiming same, and that it was duly recorded prior to the time of the alleged larceny, in the brand book required to be kept by the livestock sanitary board. In the absence of this proof, you have no right to give any consideration to the defendant's claim of said brand.

"I further charge you that when persons charged with the larceny of an animal are residents of Arizona at the time of said offense, and such persons base their claim of ownership of the animal alleged to have been stolen upon the brand claimed by the accused to be upon said animal, the only proof that the accused owned said brand at the time of the larceny that you may properly consider is proof that said brand so claimed by the accused to have been on said animal was recorded in the brand book required to be kept by the livestock sanitary board of Arizona. . . . "

These two instructions are urged as erroneous in the motion for a new trial. The effect of the rulings in regard to rejecting and striking the evidence of defendants' claim of ownership and in the foregoing instructions withdrawing all evidence of the claim of ownership by defendant, is to deny to

the defendant, charged with the larceny of a range animal, the right to show that he made a *bona fide* claim of title to such animal. Evidence establishing his ownership and record of the brand found on such animal is made the only competent evidence of his claim of ownership; such proof is required to be made by the certificate of the livestock sanitary board certifying the contents of the brand book, thereby showing a legal title to the recorded brand, and no other evidence is made competent for that purpose.

The livestock sanitary law, chapter 51 of the Laws of 1905, made no such requirement. In order to establish *prima facie* the ownership of a range animal, proof of the ownership and due record of the brand on the animal, with proof that the brand tax was paid, was all the evidence required to make out a *prima facie* title to the animal bearing the brand. The evidence required to establish the ownership and recording of the brand is a certificate of the secretary of the livestock sanitary board of the entry upon the brand book, made in conformity to the requirements of the provisions of that law in respect to recording the brand. The fact of the right to use the brand *prima facie* was provable by the brand tax receipt. Such evidence, the certificate of the record of the brand and the brand tax receipt in the possession of a person named therein, was made evidence of a compliance with the law in respect to those matters required by such law, and was made *prima facie* evidence in all the courts that the animal bearing such brand, if an old brand, is the property of the owner of such brand. Section 66 required the payment of the brand tax as a condition precedent to the continued right to use the brand, and made the brand tax receipt *prima facie* evidence of such right. Section 67 made it unlawful to use a brand not recorded, and upon which the brand tax had not been paid, and made cattle bearing such brand, if freshly branded, subject to seizure.

Sections 66 and 67 were repealed without a saving clause by chapter 4, page 13, First and Special Session Laws of 1912. By such repeal, when the ownership of a range animal is to be established, the party claiming ownership may make out a *prima facie* title by procuring the certified copy made by the secretary of the livestock sanitary board, of the entry of

the record of the brand made in the brand book relating to
the brand borne by the animal, and such certified copy of such
brand is required to be taken in all the courts of the state as
*prima facie* evidence of the rights of the person therein named
(or of his assignor upon proper proof of the assignment) to
use said brand for branding his animals, that the owner of
such brand has complied with the provisions of said law, and
that the brand shall be taken in all the courts of the state as
*prima facie* evidence that the animal bearing the brand is the
property of the owner of such recorded certified brand, except
when the brand is borne by an animal seized under another
provision of the act. No such facts have been shown to exist
in this case. No proof of the recording of the brand found
on the animal was introduced by the state. The only proof
of ownership of the brand introduced was oral evidence to the
effect that Luther Hart, J. G. Verkamp and Mary Babbitt
owned the X lazy S brand, and claimed the range cattle bear-
ing that brand. Other witnesses testified to the fact that said
parties were the reputed owners of that brand and claimed
the range animals bearing that brand. The appellants made
no attempt to dispute such facts; such evidence with the evi-
dence of *Luther Hart,* to the effect that about four years prior
to the trial he and his co-owners of the brand purchased some
cattle from one Dick Gibbons, a cattle-raiser running cattle
on the range in Apache county. Such cattle so purchased
when received were branded 7 bar T, and their brand X lazy
S was also placed upon those cattle, and the cattle were re-
leased upon the open range bearing both of said brands. That
the steer in question bore both brands. Other evidence was
introduced tending to prove that the steer bore both said
brands, and that cattle on the range had been observed bear-
ing both brands. This was the state of the evidence of the
prosecution upon the question of ownership of the animal that
the defendants were called upon to meet, when the foregoing
record was made. It was this case thus made by the prosecu-
tion that the appellants were attempting to meet and over-
come. The evidence offered by them and rejected or stricken
by the court, and of which the jury was forbidden to consider
by the direct instructions of the court, was parol evidence of
ownership of the animal in question. Such evidence was ad-

missible by the same rule that rightly admitted the parol
evidence of ownership when introduced by the state. The
evidence offered by the defendants would tend to explain their
act, and throw light upon the transaction. The defendants
claim they took and slaughtered the animal in question be-
cause they believed it bore the 7 bar T with X on left hip
brand, and that all steers of the apparent age of the animal
in question bearing that brand, running on the range in the
vicinity of Winslow, were claimed as the property of Heck
Marley, one of the defendants, and that Heck Marley killed
this animal. If these facts were established and the claim
was *bona fide,* this was a good defense.

The well-settled law of larceny is that: "Since one who
takes what he believes to be his has not the intent of a thief,
a *bona fide* claim of right to take is incompatible with the in-
tent to steal; and one who takes under a *bona fide* claim of
right to do so is not guilty of larceny. So one who takes goods
under the authority of another, in the *bona fide* belief that he
is authorized, or that his principal is entitled, is not guilty
of larceny, although such belief is mistaken. . . . It is neces-
sary, however, in all cases that the claim of right be a *bona
fide* one. Whether the claim is honest is a question for the
jury. And if the jury are in doubt they must acquit." 25
Cyc. 49–51.

The refusal of the court to receive parol evidence of the
claim of ownership of the steer in Heck Marley and the in-
structions of the court mentioned above, withdrawing from
consideration of the jury all evidence of claim of such owner-
ship deprived the appellants of a right to establish their de-
fense of a *bona fide* claim of right to take the property,
deprived the appellants of the right to have the jury pass
upon the intent with which they claimed to have taken the
property, and therefore the appellants were not awarded a
fair and impartial trial by a jury, as guaranteed to them by
law. The court erred in rejecting the evidence and in in-
structing the jury as to the law governing the case, in the
particulars indicated.

The other errors that are assigned will not be now referred
to, as the judgment must be reversed; we will not consider
such for the reason, if errors were committed, upon a retrial

of this cause we presume they will not again occur, and rest content to pass upon such other questions in such cases as require their consideration.

Judgment reversed and remanded.

FRANKLIN, C. J., and LAINE, J., concur.

N. B.—Judge ROSS being disqualified and announcing his disqualification in open court, the remaining judges, under section 3 of article 6 of the Constitution, called in Hon. F. B. LAINE, Judge of the superior court of Greenlee county, to sit with them in the hearing of this cause.